UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------

**KENO ALBERT TROTT**,

Petitioner,

-against-

**KRISTOS TIRSITE TROTT**,

Respondent.

--------------------------------------------------------

**MEMORANDUM DECISION
AND ORDER**
20-CV-1392 (AMD) (CLP)

**ANN M. DONNELLY,** United States District Judge:

On March 16, 2020, the petitioner, Keno Trott, brought this case against the respondent,

Kristos Trott, also known as Kristos Clarke, pursuant to the Hague Convention on the Civil

Aspects of International Child Abduction ("Hague Convention" or "Convention"), as

implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C.

§§ 9001-9011.  (ECF Nos. 1-3.)  Trott, a citizen of Bermuda, seeks the return of TKI and KMLT

to Bermuda pending the resolution of custody proceedings in the Bermudian courts.  (ECF No. 3

¶ 16.)  Clarke, a United States citizen, moved to dismiss the petition on June 16, 2020.  (ECF No.

24.)  I heard oral argument on August 11, 2020.[1]  For the reasons that follow, the motion to

dismiss the petition is denied and the petition is granted.

## BACKGROUND[2]

Trott and Clarke married in Bermuda in 2008, when TKI was ten months old.  (ECF No.

3 ¶¶ 20-21.)  Although Trott is not TKI's biological father, he raised her as his own, and the

---

[1] The Court commends the attorneys for their excellent oral and written submissions.
[2] All facts are taken from the petition and its attachments, including documents attached to the affirmation of Kathleen Gardner dated March 13, 2020, which was filed with the petition.  (ECF No. 1, 3.)  I also take judicial notice of the decisions of the Supreme Court of Bermuda (ECF No. 26-1) and the Court of Appeal for Bermuda.  (ECF No. 1, Ex. A.)  For purposes of this motion, I accept as true the factual allegations in the petition and draw all reasonable inferences in the petitioner's favor.  *See Town of Babylon v. Fed Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

parties have always considered him to be TKI's father.  (*Id.* ¶ 21.)  TKI was born in New York in 2007; she is now twelve years old and a United States citizen.  (*Id.* ¶¶ 21-22, 24.)  KMLT, Trott and Clarke's biological child, was born in Bermuda in September of 2008; she is now eleven years old and holds dual United States and Bermudian citizenships.  (*Id.* ¶¶ 23-24.)

The children lived in Bermuda from 2008 to 2013.  (ECF No. 3 ¶ 30.)  Trott and Clarke separated in 2011, and in 2013, Clarke moved to New York with TKI and KMLT to live with her older children from a previous relationship.  (*Id.*)  Although there was a court order in place prohibiting the children's removal from Bermuda without leave of the court, Trott did not object at that time to Clarke's move with the children.  (*Id.*)  Instead, he exercised his custody rights by visiting the girls in New York, and they spent their summer holidays in Bermuda.  (*Id.*)  This arrangement continued amicably until the summer of 2018, when the children "refused" to return to the United States after their summer holiday.  (*Id.* ¶ 31.)

The children confided in their father that a friend's father had sexually abused them earlier that year in New York.  (ECF No. 3 ¶ 32.)  Clarke reported the abuse to the police when it happened, and the perpetrator was arrested, but she did not tell Trott about the abuse or send the girls to see a counselor.  (*Id.*)  TKI also reported that Clarke had hit her several times, and neglected her and her younger siblings by leaving them at home alone in the evenings.  (*Id.* ¶ 33.)  After hearing these reports, Trott decided it would be in the children's best interest to stay in Bermuda instead of returning to New York.  (*Id.* ¶ 35.)

When Trott refused to send the girls to New York in September of 2018, Clarke brought a Hague Convention petition against Trott in Bermuda.  (ECF No. 3 ¶ 36.)  After an extensive investigation, the Supreme Court of Bermuda granted Clarke's request to return the girls to New York.  (*Id.* ¶ 36; ECF No. 1, Ex. A ¶¶ 16-17.)  As part of that proceeding, social workers

interviewed the girls separately at least twice.  (ECF. No. 26-1 ¶¶ 14-16; ECF No. 1, Ex. A ¶¶

16-24.)  TKI described instances of both physical abuse and neglect by Clarke and reported that

Clarke "does not act like a parent."  (ECF No. 1, Ex. A ¶ 19.)  TKI told the social workers that

her mother sometimes stayed out late with her boyfriend leaving her and KMLT to care for their

younger siblings without leaving food in the house; they would ask Clarke to bring food when

she came home, but she did not.  (*Id.*)  TKI also said that her mother abused her physically,

including hitting TKI with a wire hanger, hitting TKI in the head with a bottle, and "bust[ing]"

TKI's lip.  (*Id.*)  Both girls told the social workers that a friend's father sexually abused them; the

social workers noted that KMLT was "still visibly disturbed by this incident."  (*Id.* ¶¶ 20, 23-24.)

The girls said they wanted to visit their mother, but neither wanted to live with her.  (*Id.* ¶¶ 28,

31.)

     The Supreme Court of Bermuda held that Trott had wrongfully retained the children in

Bermuda, and "failed to establish there is grave risk of harm to the children being exposed to

physical and psychological harm in the context of an exception to the general rule of prompt

return of children under the Convention."  (ECF No. 26-1 ¶ 38.)  The court considered the girls'

objections to living with their mother, but interpreted their willingness to visit her as evidence

that they also wanted to live with her.  (*Id.* ¶¶ 42(h), (l).)[3]  The court concluded that "[t]he

children do not object to returning to the USA," and that "a mere preference" for residing with

their father was not a "valid objection" under Article 13 of the Convention.  (*Id.*)  The court

expressed concerns about the situation to which the children would return in New York and

directed counsel to identify "what protective measures are available to ensure the smooth and

safe return of the children."  (*Id.* ¶ 45.)  The Court also directed Clarke to "provide written

---

[3] The Supreme Court judge did not interview the children, choosing instead to rely on the notes of the social workers' interviews.  (ECF No. 26-1 ¶ 38(j).)

assurance simultaneously to this court and the US authorities that she has appropriate

accommodation, ability and means to feed the children in the interim period pending the US

Courts, Social Services and other relevant agencies being seized of proceedings regarding these

children." (*Id.* ¶ 46.) Nonetheless, the court did not take any steps to ensure that the conditions

would be in place before the children were taken back to New York. (*See* ECF No. 1, Ex. A ¶

61.)

Trott appealed, and the Bermuda Court of Appeal reversed the lower court's ruling in a

July 12, 2019 decision. (ECF No. 1, Ex. A ¶¶ 36-38.) The Court of Appeal held that the lower

court gave insufficient consideration to the exceptions specified in Article 13 of the Hague

Convention:

> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child *if the person, institution or other body which opposes its return establishes that –*
>
> The person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
>
> *There is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.*
>
> *The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.*
>
> In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

(*Id.* ¶ 6 (quoting Hague Convention, art. 13, Oct. 25, 1980, T.I.A.S. No. 11670, 1988 WL

411501) (emphasis in original).) Specifically, the Court of Appeal found that the lower court did

not give the children's objections "the weighty consideration they deserved," and had confused

the children's "willingness to visit their mother" with "a willingness to return to reside with her."

(*Id.* ¶¶ 37, 42, 49.)  Moreover, the Court of Appeal found that while Trott had not established a "grave risk" of physical abuse if the girls returned to New York, the lower court took "too narrow a view of the circumstances" and did not address the "ongoing concern for the emotional impact which their experiences will continue to have upon the girls, and which may be expected to become exacerbated by their return to the immediate environment of the events."  (*Id.* ¶ 36.) In other words, the lower court did not consider whether forcing the girls to return to New York would create an "intolerable situation" under Article 13(b) of the Convention.  (*Id.*)  The Court of Appeal also found that the lower court had improperly conditioned the children's return to New York on terms that the court could not enforce.  (*Id.* ¶ 60-62.)  After reviewing the welfare reports and the girls' statements, the Court of Appeal concluded that the children "should continue to reside in Bermuda in the custody of their father at least until a final determination of the arrangements for their custody and care can be made by the Courts of this jurisdiction." (ECF No. 3 ¶ 38; ECF No. 1, Ex A ¶ 74.)[4]

In October of 2019, Clarke petitioned the Supreme Court of Bermuda, which was handling the custody matter, to allow the children to travel to New York over their Christmas holidays.  (ECF No. 3 ¶ 43.)  Relying on a social worker's determination that the children could safely travel to the United States to visit their mother, the Supreme Court approved Clarke's application and permitted the children to travel to New York from December 26, 2019 to January 3, 2020.  (ECF No. 3 ¶¶ 44-45; ECF No. 1, Exs. B, D.)  In its order, the court noted that it would retain jurisdiction over the children until further ordered, and specifically warned Clarke that she

---

[4] The Court of Appeal made its own determination rather than send the matter back to the Supreme Court because the parties agreed that "further delay in the disposition should be avoided and that, rather than refer the matter back to the Supreme Court, this Court should consider the objections of the girls in all the circumstances of the case and come to our own decision on whether they should be returned."  (ECF No. 1, Ex A ¶ 54.)

"may be held in contempt of court and subject to imprisonment, a fine or both" if she disobeyed the order.  (ECF No. 3 ¶¶ 45-46; ECF No. 1, Ex. B at 2-3.)  Clarke did not return the children to Bermuda on January 3, 2020, and kept them in New York.  (ECF No. 3 ¶¶ 50-51.)

Trott filed a Request for Return with the United States Department of State on January 6, 2020.  (ECF No. 3 ¶ 60.)  Since then, Trott alleges that he has had little contact with Clarke or his daughters, and the few conversations he has had with them have raised concerns for their safety.  (ECF No. 3 ¶¶ 61, 64, 66.)  Trott believes that Clarke has commenced family court proceedings in New York to gain custody of the children.  (ECF No. 3 ¶ 67.)  Trott asks that TKI and KMLT be returned to Bermuda, where they were habitually living at the time of their removal, in compliance with the order of the Supreme Court of Bermuda.  (ECF No. 3 ¶ 74.)

## STANDARD OF REVIEW

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  At the pleadings stage of the proceeding, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## DISCUSSION

The Hague Convention, to which the United States and Bermuda are signatories, is meant to address "the problem of international child abductions during domestic disputes."  *Abbott v. Abbott*, 560 U.S. 1, 8 (2010).  The Convention's purpose is "to secure the prompt return of children wrongfully removed to or retained in any contracting state," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  Hague Convention, art. 1.  The Convention is "especially aimed at the

unilateral removal or retention of children by those close to them, such as parents, guardians, or family members." *Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005). The Convention prevents parties from removing or retaining a child in a jurisdiction "more favorable to their custody claims in order 'to obtain a right of custody from the authorities of the country to which the child has been taken.'" *Id.* at 129 (citations omitted).

Nevertheless, the Convention does not apply to every custody dispute. A petitioner bringing an action under the Hague Convention must show that the child invoked in the petition is "habitually resident" in a country that is a signatory to the Hague Convention, and that the child was wrongfully removed to or retained in a different country. *Gitter*, 396 F.3d at 130. A decision under the Hague Convention "shall not be taken to be a determination on the merits of any custody issue." Hague Convention, art. 19. "The Convention's focus is simply upon whether a child should be returned to her country of habitual residence for custody proceedings." *Mota v. Castillo*, 692 F.3d 108, 112 (2d Cir. 2012).

The abduction analysis is limited, initially, to determining whether the respondent has "wrongfully removed or retained" the child; on this issue, the petitioner bears the burden of proof. *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999) ("*Blondin II*") (citing 22 U.S.C. § 9003(e)(1)(A)). Under Article 3 of the Convention a "removal" or a "retention" is "wrongful" if:

    (a) it is in breach of rights of custody attributed to a person . . . , either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

    (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Diorinou v. Mezitis*, 237 F.3d 133, 140 (2d Cir. 2001) (quoting Hague Convention, art. 3).

Even when a petitioner states a *prima facie* claim under the Hague Convention, "[r]eturn is not required if the abducting parent can establish that a Convention exception applies."

*Abbott*, 560 U.S. at 22; *see also* 22 U.S.C. § 9001(a)(4).  For example, under Article 13, a court

may decline to order a child's return if "there is a grave risk that his or her return would expose

the child to physical or psychological harm or otherwise place the child in an intolerable

situation," Hague Convention, art. 13(b), or if the child objects to return and the child has

reached a sufficient "age and degree of maturity at which it is appropriate to take account of its

views."  Hague Convention, art 13.  The Second Circuit has cautioned that the defenses listed in

the Convention should be applied "narrowly," and even where an exception has been established,

the district court may still order the child's return.  *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir.

2013).

## I.       The Bermuda Court of Appeal's Decision is Entitled to Comity

Resolution of the parties' dispute turns largely on whether this Court extends comity to

the decision of the Bermuda Court of Appeal.  Comity is "the recognition which one nation

allows within its territory to the legislative, executive or judicial acts of another nation."  *Hilton*

*v. Guyot*, 159 U.S. 113, 163 (1895).  "Extension of comity to a foreign judgment is 'neither a

matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the

other,'" *Asvesta v. Petroutsas*, 580 F.3d 1000, 1011 (9th Cir. 2009) (quoting *Hilton*, 159 U.S. at

164); rather, it is a "case-specific inquiry," *Diorinou*, 237 F.3d at 143.

The Second Circuit has observed that "comity is at the heart of the [Hague] Convention,"

*Blondin II,* 189 F.3d at 248; "where comity is at issue, a court properly begins its analysis 'with

an inclination to accord deference to' a foreign court's adjudication of a related Hague petition,"

*Asvesta*, 580 F.3d at 1011 (quoting *Diorinou,* 237 F.3d at 145).  However, a foreign judgment

may contain such defects that comity is not appropriate.  *Diorinou*, 237 F.3d at 143 (citing

Restatement (Third) of Foreign Relations § 482 cmt. b (1987)).  Courts may decline to extend

8

comity where the foreign court "clearly misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness." *Asvesta*, 580 F.3d at 1014.

Clarke argues that the Bermuda Court of Appeal's decision to reverse the lower court's decision to return the children to New York is not entitled to comity. (ECF No. 25 at 16-17.) First, Clarke says that Trott had no custody rights over TKI under New York law because she is neither his biological nor adopted child. (ECF No. 25 at 7-8.) Second, Clarke asserts that the Court of Appeal gave too much weight to the children's preference to remain in Bermuda, and engaged in an impermissible "best interests of the child" analysis. (*Id*. at 8.)

The Bermuda Court of Appeal's decision, based on a meticulous review of the record and a well-reasoned application of the Hague Convention, is entitled to comity. The Court of Appeal agreed that Trott wrongfully retained the girls in Bermuda, but found that he established valid defenses to return under Article 13 of the Convention. (ECF No. 1, Ex. A ¶¶ 4-5, 36.) The Court of Appeal determined that the lower court did not give appropriate consideration to the children's objections to returning to New York, and did not address the likelihood that the children would be subjected to an "intolerable situation" under Article 13(b) if they were forced to return to New York, where they had been sexually abused. (*Id*. ¶¶ 36, 37, 49.) Finally, the Court of Appeal determined that the lower court had conditioned the children's return on terms that the court could not enforce, including that "adequate arrangements [] be put in place for their protection and care." (*Id*. ¶¶ 60-62.)

The record, which the Court of Appeal cited at length, included a thorough investigation by social workers in Bermuda, who interviewed the children on several occasions. (ECF No. 1, Ex. A ¶¶ 16-18; ECF No. 26-1 ¶¶ 13-16, 19.) The children repeatedly and clearly articulated to

the social workers who interviewed them that they wanted to remain in Bermuda with their

father.  (ECF No. 1, Ex. A ¶¶ 19, 72; ECF No. 26-1 ¶ 35.)  They also expressed concerns about

the care that they received in their mother's home and became very emotional when describing

the physical and sexual abuse they experienced in New York.  (ECF No. 1, Ex. A ¶¶ 19, 21, 24,

26; ECF No. 26-1 ¶¶ 32-33.)  The lower court judge, who did not speak to the children directly,

dismissed their objections as "mere preference," which could be better resolved through a

custody determination in the court of habitual residence, New York.  (ECF No. 1, Ex. A ¶ 17;

ECF No 26-1 ¶ 38(l).)  The lower court also emphasized the children's willingness to visit their

mother in New York, interpreting it as a willingness to live with her, and discounted their

expressed resistance to returning permanently to the United States.  (ECF No. 26-1 ¶¶ 38(k)-(l).)

The Court of Appeal explained that "where a child's objections to being returned are

based upon concerns about the treatment from the left-behind parent, an objection to return to the

state of habitual residence becomes inseparable from an objection to return to the left-behind

parent."  (ECF No. 1, Ex. A ¶ 49.)  In this case, the girls' objections were "soundly based and

firmly expressed" and "point to the reasonable concerns of the girls themselves about their

mother's ability to protect and care for them."  (*Id.* ¶ 72.)  The court concluded that "[h]aving

considered their objections and concerns, we were satisfied that it is in the best interest of the

girls - those interests which the Convention ultimately considers to be most paramount - that they

should continue to reside in Bermuda in the custody of their father at least until a final

determination of the arrangements for their custody and care can be made by the Courts of this

jurisdiction."  (*Id.* ¶ 74.)

"Article 13 allows a court to deny repatriation where it is determined that a child objects

to being returned and has attained an age and degree of maturity at which it is appropriate to take

account of the child's views." *Matovski v. Matovski*, No. 06-CV-4259, 2007 WL 2600862, at

*14 (S.D.N.Y. Aug. 31, 2007). Moreover, "[a] court may refuse repatriation solely on that

basis." *In re D.T.J.*, 956 F. Supp. 2d 523, 540 (S.D.N.Y. 2013) (quoting *Blondin v. Dubois,* 238

F.3d 153, 166 (2d Cir.2001) ("*Blondin IV*")). *See also de Silva v. Pitts*, 481 F.3d 1279, 1286

(10th Cir. 2007) (quoting Elisa Pérez-Vera, *Explanatory Report on the 1980 Hague Child*

*Abduction Convention, Acts and Documents of the 14th Session*, vol. III 426, at 433 (1982)

("Pérez-Vera Report")) ("[T]he Convention also provides that the child's views concerning the

essential question of its return or retention *may be conclusive,* provided it has, according to the

competent authorities, attained an age and degree of maturity sufficient for its views to be taken

into account. In this way, the Convention gives children the possibility of interpreting their own

interests.") (emphasis in original).[5]

"Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the

age and maturity exception are understandably disparate." *Haimdas v. Haimdas*, 720 F. Supp.

2d 183, 205 (E.D.N.Y.), *aff'd*, 401 F. App'x 567 (2d Cir. 2010) (quoting *de Silva,* 481 F.3d at

1287). It is possible that courts in this Circuit would not have placed the same emphasis on

children's objections that the Bermuda Court of Appeal did, but it is by no means certain that our

courts would have dismissed the girls' objections as "mere preference." *See, e.g.*, *Demaj v.*

*Sakaj*, No. 3:09-CV-255, 2013 WL 1131418, at *26 (D. Conn. Mar. 18, 2013) (denying Hague

Convention petition where 13 year old expressed a preference for staying in the United States

rather than returning to Italy because she liked her friends and school in Connecticut, but still

---

[5] Elisa Pérez-Vera was the official Hague Conference reporter for the Convention. "Her explanatory report is recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Hague International Child Abduction Convention; Text and Legal Analysis, 51 FR 10494-01, 1986 WL 133056, at *10503-04 (March 26, 1986).

wanted to visit Italy on vacation); *In re D.T.J.*, 956 F. Supp. 2d at 539-40 (denying Hague

Convention petition where 14 year old objected to returning to Hungary because she had more

support from friends and family in New York and imagined a better future for herself in the

United States); *Laguna v. Avila*, No. 07-CV-5136, 2008 WL 1986253, at *12 (E.D.N.Y. May 7,

2008) (denying Hague Convention petition where 13 year old objected to returning to Columbia

with his father because he had more friends and better opportunities in the United States);

*Matovski*, 2007 WL 2600862, at *14 (denying Hague Convention petition based on the

objections of children, ages 11 and 12, who preferred staying in New York to returning to

Australia because they had more friends and family and a more "stable life" in New York); *Diaz*

*Arboleda v. Arenas*, 311 F. Supp. 2d 336, 344 (E.D.N.Y. 2004) (denying petition where the

children, ages 14 and 12, objected to returning to Columbia to live with their father because they

believed they would have better educational and professional opportunities in the United States).

The mere possibility that a court in this jurisdiction would reach a different result is not a reason

to deny comity; to do so would be contrary to the fundamental goals of the Hague Convention.

*See* Hague Convention, art. 1(b).

Nor am I persuaded by Clarke's argument that both the Supreme Court of Bermuda and

the Bermuda Court of Appeal should have considered whether Trott had custodial rights over

TKI under New York law.[6]  The only custodial rights at issue in the Bermudian courts were

Clarke's custody rights, as she was the petitioner in the Bermudian action.  Hague Convention,

art. 3; *see also Gitter,* 396 F.3d at 130-131.[7]  The Court of Appeal acknowledged Clarke's

---

[6] The Court of Appeal noted that it was "informed and has proceeded upon the basis, as accepted and agreed by the parties, that [TKI] is to be regarded and treated as a child of the family of [Trott and Clarke]."  (ECF No. 1, Ex. A ¶ 11.)

[7] The respondent asserted during oral argument that the Court of Appeal did not fully appreciate the petitioner's "jurisdictional gamesmanship" when it granted him custody of TKI.  The respondent, however, engaged in gamesmanship of her own; she commenced a custody action in New York in

custodial rights over the children, but ultimately held that Trott had established an exception to return.

As the respondent points out, a "best interest" analysis in the context of custody decisions should be left to the court making the custody determination and not the court deciding a Hague Convention Petition. *See Asvesta*, 580 F.3d at 1015 ("[T]he convention is clear that a court considering a Hague petition should not consider matters relevant to the merits of the underlying custody dispute, such as the best interests of the child, as these considerations are reserved for courts of the child's habitual residence."). But I do not read the Bermuda Court of Appeal's decision as a determination of the underlying custody dispute merely because the court used the phrase "best interests." *See Blondin IV*, 238 F.3d at 161 ("The Hague Convention is not designed to resolve underlying custody disputes. This fact, however, does not render irrelevant any countervailing interests the child might have.") (internal citations omitted). The court engaged in a thorough examination of the girls' objections and the weight that they should be afforded given their age and maturity, which the parties did not dispute. Given the totality of circumstances, the Court of Appeal concluded that giving the girls' objections more weight served their best interests under the Hague Convention. (ECF No. 1, Ex. A ¶¶ 72, 74.) This conclusion was not unreasonable, a clear misinterpretation of the Hague Convention, or contrary to the Convention's fundamental objectives. *See Asvesta*, 580 F.3d at 1014.[8]

---

January of 2020, after she retained the children, to "avoid a return remedy," which also runs "counter to the Convention's purpose of deterring child abductions by parents who attempt to find a friendlier forum for deciding custodial disputes." *Abbott*, 560 U.S. at 20.

[8] The respondent cites two case in which United States courts declined to extend comity to the Hague Convention determinations of foreign courts: *Asvesta v. Petroutsas*, 580 F.3d 1000, 1020 (9th Cir. 2009) and *Carrascosa v. McGuire*, No. 07-CV-0355, 2007 WL 496459, at *9 (D.N.J. Feb. 8, 2007), *aff'd*, 520 F.3d 249 (3d Cir. 2008). In *Asvesta*, the Ninth Circuit held that a Hague Convention determination by a Greek court was not entitled to comity because the court "completely failed to determine the child's habitual residence in its Hague Convention analysis," its "factual determination" regarding the father's exercise of custody and his consent to removal was "completely unsupported" and "contradicted by" the

## II.   The Petition States a *Prima Facie* Claim Under the Convention

Clarke also argues that the petition does not state a *prima facie* claim under the Hague Convention, because the children habitually reside in New York, not Bermuda, and because Trott fails to state any custody rights under New York law.  (ECF No. 25 at 8-9.)

To establish a *prima facie* claim under the Hague Convention, a petitioner must show: "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention."  *Gitter,* 396 F.3d at 130-131; *see also* Hague Convention, art. 3.  "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).

The petitioner has established a *prima facie* claim.  At the time the children were retained in New York, they were habitually resident in Bermuda pursuant to a court order.  (*See* ECF No. 1, Ex. A ¶ 74; *Id.*, Ex B at 3.)  Under Bermuda law, "[a] child is habitually resident in the place where [she] resided  . . . with one parent under a separation agreement or with the consent or implied consent of the other or *under a court order* . . . ."  Bermuda Child Act 1998 36L(2)(b) (emphasis added).  Clarke kept the children in New York in contravention of the Bermudian

---

evidence, and its "grave risk" analysis was "wholly unsupported" and based on the assumption "that the child's separation from his mother at a young age would be more traumatic than his separation from his father."  580 F.3d at 1017-20.  In *Carrascosa*, the District Court of New Jersey declined to extend comity to a Spanish court's Hague Convention determination that failed to account for the petitioner's custody rights under New Jersey law, the place of habitual residence, and failed to afford comity to a previous custody agreement ordered by a New Jersey court. *Carrascosa*, 2007 WL 496459, at *6.  By contrast, the Bermuda Court of Appeal's decision adhered closely to the procedure outlined by the Convention, was supported by factual evidence, and did not disregard an order of the court in the place of habitual residence.

14

court's order, and in breach of the interim custody rights that had been granted to Trott under Bermudian law. (ECF No. 1, Ex B at 3-4; *Id*., Ex. E.)

Nor am I persuaded by Clarke's claim that Trott does not have any custody rights to TKI in New York and therefore cannot sustain a claim under the Hague Convention. (ECF No. 25 at 30.) The petitioner's custody rights under New York law are pertinent to this analysis only if the children were habitual residents of New York at the time of their retention in January of 2020. The petitioner has established that pursuant to Bermudian law, the children were habitually resident in Bermuda immediately before their mother took them to and kept them in the United States. I have extended comity to the decision by the Bermuda Court of Appeal, which established Trott's interim custody rights. *See* Hague Convention, art. 3 ("rights of custody . . . may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State").[9] Accordingly, whether New York courts would grant Trott custody rights is not the issue before me today. He has established a *prima facie* claim for returning the children to Bermuda, and therefore, the respondent's motion to dismiss the petition is denied.

## III.   The Children Must Be Returned to Bermuda

The respondent has requested the opportunity to challenge the facts in the petition should her motion be denied. (ECF No. 25 at n.1.) However, because I extend comity to the Bermuda Court of Appeal's decision, I also accept that court's fact-finding. *See Diorinou*, 237 F.3d at 142; *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the

---

[9] It is not necessary to reach the question of Trott's custody rights to TKI under New York law. Nevertheless, it is not at all clear that Trott has no custody rights to TKI in New York. According to the record of the Bermuda proceedings, the parties have always considered Trott to be TKI's father.

merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").

The Bermuda petition centered on concerns for the children's safety and their stated objections to returning to New York. Trott challenged the applicability of the exceptions to the convention, and the Court of Appeal, after an extensive analysis, determined that the children should remain in Bermuda until the underlying custody issues could be resolved. Trott brought this petition because Clarke did not pursue her custody rights in Bermuda—which may ultimately lead to her regaining custody of TKI and KMLT—and chose instead to disregard the Bermudian court's orders and keep the children in New York. Clarke's decision to retain the girls appears to be based not on any concerns regarding the girls' safety or their objections to living in Bermuda, but on her own disappointment with the outcome of her Hague Convention petition by the Bermudian courts. Although Clarke submits evidence that the girls are adjusting to life in New York (*see* ECF No. 31), she has raised no new facts or objections that would call into question the Bermuda Court of Appeal's ruling.[10] Allowing Clarke to re-litigate the previous action in a new forum would undermine "the Convention's purpose of deterring child abductions by parents who attempt to find a friendlier forum for deciding custodial disputes." *Abbott*, 560 U.S. at 20.

Trott has established a *prima facie* claim for returning the children to Bermuda based on a previous order by the Bermuda Court of Appeal to which I give preclusive effect. The respondent has wrongfully retained the children in New York and has raised no factual issues

---

[10] Along with her motion to dismiss, Clarke submitted the records of the New York City Administration for Children's Services ("ACS"), which opened an investigation after Clarke refused to return the girls to Bermuda, as well as the affidavit that she submitted with her petition in the Bermuda action, which the Bermudian courts considered in making their determination. (ECF No. 30; *see also* ECF No. 1, Ex. A ¶ 15; ECF No. 26-1 ¶ 36.)

that merit further litigation of this matter.  Therefore, I am compelled to grant the petition and order the children's return to Bermuda.  *See* 22 U.S.C. § 9001(a)(4).

## CONCLUSION

The respondent's motion to dismiss the petition is denied, and the petition is granted. The Clerk of Court is respectfully directed to enter judgment in favor of the petitioner.  TKI and KMLT are to be returned to their father in Bermuda, as soon as travel arrangements can be made, and should remain under the jurisdiction of the Bermudian courts until custody proceedings in that country are resolved.  This order is stayed for thirty days to allow the parties to resolve the timing and circumstances of the children's return, and for the respondent to seek and obtain a decision on an expedited appeal.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      August 21, 2020

17